UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
VERONICA HANLEY,

               Plaintiff,

    -against-

NASSAU HEALTH CARE CORPORATION,

               Defendant.
-----------------------------------------------------------X

**ORDER**
10-CV-3884 (SJF)(AKT)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    JUL 03 2013    ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

     On August 24, 2010, plaintiff Veronica Hanley ("plaintiff") commenced this action

against her former employer, Nassau Health Care Corporation ("defendant" or "NHCC"),

pursuant to the False Claims Act, 31 U.S.C. §§ 3729, et seq., alleging that defendant unlawfully

retaliated against her for complaining about unlawful and improper medical practices by its

employees and agents. [Docket Entry No. 1]. On July 18, 2012, plaintiff voluntarily dismissed

her claims asserted pursuant to the False Claims Act, and the complaint was unsealed. [Docket

Entry No. 9]. On July 27, 2012, plaintiff filed an amended complaint alleging violations of:

(1) New York Labor Law § 741 ("section 741"); (2) 42 U.S.C. § 1983 ("section 1983"); (3) 42

U.S.C. § 1985(3) ("section 1985(3)"); (4) 42 U.S.C. § 1986 ("section 1986"); and (5) 42 U.S.C.

§ 1988 ("section 1988"). [Docket Entry No. 10] ("Am. Compl."). Now before the Court is

defendant's motion to dismiss the amended complaint. [Docket Entry No. 19]. For the reasons

that follow, the motion is GRANTED.

I.     Background

     NHCC is a public benefit corporation established for the purpose of operating health care

1

facilities in Nassau County.  See N.Y. PUB. AUTH. LAW § 3401.  Plaintiff began working at

Nassau County Medical Center, the predecessor to NHCC, in 1972 and retired from NHCC on

October 30, 2009.  Am. Compl. at ¶¶ 10, 65.  During her career, plaintiff held the civil service

positions of Registered Nurse I, Registered Nurse II, and Registered Nurse III, and at all times

held the in-house title of Nurse Manager.  Id. at ¶¶ 12-13.

     In 2005, plaintiff was assigned to the Occupational Health Department at Nassau

University Medical Center ("NUMC") and later became "supervisor of the NUMC Department

of Nursing Staff in the Occupational Health Department."  Id. at ¶¶ 14-15.  In January 2008, the

Occupational Health Department was put under the supervision and control of Dr. Jorge Gardyn,

who "was utilized as a 'contractor[,]' as was his staff."  Id. at ¶ 16.  Plaintiff "and other

employees became aware of and observed improper practices and actions [by Dr. Gardyn and his

staff] that . . . constitute[d] a danger to patients' and the public's imminent health and safety" and

that plaintiff "reasonably believed to be a violation of law . . . ."  Id. at ¶¶ 19-20.

     The amended complaint identifies several "improper practices" by Dr. Gardyn and his

staff that plaintiff alleges violated laws and regulations and "plac[ed] patients in imminent risk,"

id. at ¶ 23, including:  (1) improper FIT testing procedures "for respirators used by Occupational

Health clients for OSHA physicals," including Dr. Gardyn's failure to use "very laborious and

time consuming cleaning standards as required by the Centers for Disease Control," id. at ¶¶ 23-

27, 39; (2) improper billing practices with respect to "PPD's and services provided for the

Master List when it covered areas that were not [Dr. Gardyn's] and not to be billed," id. at ¶ 28;

(3) permitting personnel upon arrival to the Occupational Health Department "to perform direct

patient care without Human Resource clearance, without ID badges and without unit specific

training/competencies," id. at ¶ 36; (4) allowing staff to "impersonat[e] nurses; i.e. [to] stat[e]

2

they are RN's without taking the state licensure exams," id. at ¶ 37; (6) hand carrying "urine drug screens . . . out of the hospital and transport[ing] [them] in PSC staff private vehicles, thereby breaking the chain of custody and posing a public health risk," id. at ¶ 38; (7) releasing to "contracted clerical personnel" "computer generated hard cop[ies] of the PMM screen[s]," which are "unique to each patient" and include confidential patient information, id. at ¶ 33-35; and (8) violating "hospital protocols on medication monitoring guidelines" by "transport[ing] . . . medications in PSC private vehicles without monitoring guidelines for maintaining temperature control," id. at ¶ 57.

In or about January 2008, plaintiff "complained about what she reasonably believed to be Dr. Gardyn and his staff's violations of law and improper practices to the attention of the NHCC administration" and attempted "to have the administration intervene and compel Dr. Gardyn to cease his improper actions." Id. at ¶¶ 21-22. Plaintiff alleges that she: (1) "advised the administration" that Dr. Gardyn was demanding "PPD's and services for the Master List," id. at ¶¶ 28-30; (2) reported to Pat Kopystianskyj, the Director of Nursing and Support Services, "that Dr. Gardyn was requesting information on each DPW person he saw," id. at ¶ 31; (3) "spoke to Sandra Maliszewki, Chief Compliance Officer/HIPAA Privacy Officer and filed a complaint with the Legal Department" regarding "Dr. Gardyn's practices[,] especially regarding his interaction with Department of Social Services clients," id. at ¶ 32;[1] (4) "filed a complaint with the HIPAA compliance officer and met with the Chief Operating Officer of NHCC, Paul Rowland, as well as with Pat Kopystianskyj, Dr. Rubin, Dr. Ward and Maureen Shannon from the NHCC Department of Risk regarding" the release of the hard copies of the PMM screens, id.

---

[1]    The amended complaint references an exhibit annexed thereto in support of this allegation, but no such exhibit was filed with the Court. See Am. Compl. at ¶ 32.

at ¶¶ 33-35; (5) reported to Kopystianskyj her concerns regarding the failure of Dr. Gardyn and his staff to "follow OSHA guidelines regarding medical clearances prior to FIT testing," id. at ¶ 40; and (6) "told Dr. Rubin about her concerns about Dr. Gardyn's billing practices," id. at ¶ 59.

Approximately one (1) year after plaintiff complained about the FIT testing procedures, she "was made to suffer retaliatory acts for having addressed her concerns with Kopystianskyj," including "desk kicking; harassing e-mails and abuse of power in day to day interactions . . . ." Id. at ¶ 41.[2] Plaintiff alleges that "there [were] constant threats by Dr. Gardyn to have the staff transferred, including, most notably, [plaintiff]," and that she "had her assignment changed, her work schedule changed, and felt she was being constantly berated, harassed and threatened" by "repeated reassignments and rescheduling to increasingly hostile and adverse conditions." Id. at ¶¶ 43-44. Specifically, plaintiff alleges that she was transferred: (1) from the Occupational Health Department to the Oncology Unit, where she "was no longer functioning as a Nurse Manager," id. at ¶ 45; (2) from the Oncology Unit to Utilization Management, id. at ¶ 47; (3) from Utilization Management "to Ambulatory with no formal assignment," id. at ¶ 48; and (4) from "Ambulatory" to "the Medical Surgery Unit on the 9th Floor as an Assistant Nurse Manager," where she "received no training in her new assignment and was not advised what her duties would be," id. at ¶ 51.

Plaintiff asked Larry Slatky, Executive Vice President of Operations, why she was being repeatedly transferred, and he responded "in sum and substance, 'because I can.'" Id. at ¶ 49. Plaintiff alleges that she "was being set up for termination" and that "Dr. Gardyn ha[d] . . . created a hostile work environment by failing to enforce hospital protocols on contracted

---

[2]     The amended complaint does not otherwise specify the timing of plaintiff's complaints or of the alleged retaliatory actions.

personnel in the [Occupational Health] department after being informed by [Occupational Health] staff on numerous occasions and continued basis that his employees must adhere to hospital protocols." Id. at ¶¶ 52-55.[3] According to plaintiff, "[t]he actions of NHCC . . . compelled [her] to retire as she was subject to an intolerable and hostile work environment causing [her] to be constructively discharged from NHCC." Id. at ¶ 66.

II.     Standard

        "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

---

[3]     Although plaintiff attributes the creation of a hostile work environment to Dr. Gardyn, the only retaliatory behavior specifically attributed to him is his threat to have plaintiff transferred from the Occupational Health Department. Am. Compl. at ¶¶ 43-44.  It is not clear from the amended complaint who is purported to have engaged in the other retaliatory behavior, including the various reassignments (one of which is specifically attributed to Slatky), the desk kicking, harassing emails and abuse of power.  However, this issue is not relevant to the disposition of the pending motion.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See McGarry v. Pallito, 687 F.3d 505, 510 (2d Cir. 2012); Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679; see also Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.") (quotations and citations omitted). Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); see also Matson v. Board of Education of City School District of New York, 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation.") (internal quotations and citation omitted).

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). Plaintiff has submitted an affidavit in response to the motion to dismiss stating (in greater detail than in

the amended complaint) her work duties, the allegedly improper practices she observed, and the

complaints she raised. [Docket Entry No. 24]. When a party submits matters outside the

pleadings in connection with a motion to dismiss pursuant to Rule 12(b)(6), a district court must

either exclude the additional material and decide the motion on the complaint alone or convert

the motion to one for summary judgment and afford all parties the opportunity to present

supporting material. Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000). Therefore, the

additional factual assertions in plaintiff's affidavit and memorandum of law are inadmissible.[4]

See, e.g., Goodman v. Port Auth. of N.Y. & N.J., 850 F. Supp.2d 363, 380 (S.D.N.Y. 2012)

("[M]emoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to

cure a defective complaint.") (internal quotation marks omitted).

III.     Analysis

     A.      First Amendment

     Section 1983 provides, in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State ... subjects, or causes to be subjected, any citizen of the United
> States ... to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured.

To state a claim under section 1983, a plaintiff must allege (1) that the challenged conduct was

"committed by a person acting under color of state law," and (2) that such conduct "deprived

[the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the

United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (citing Pitchell v. Callan, 13

F.3d 545, 547 (2d Cir. 1994)); see also Rehberg v. Paulk, 132 S.Ct. 1497, 1501-02 (2012).

---

[4]      The exclusion of the affidavit is not material to the disposition of the pending motion, as
the statements in plaintiff's affidavit and memorandum provide further support for defendant's
argument for dismissal of the section 1983 claim.

Plaintiff alleges that "[d]efendant deprived [her] of her rights, privileges or immunities secured by the U.S. Constitution and violated her rights under the Federal Civil Rights Act based on her First Amendment rights of speech, association and whistleblower activity." Am. Compl. at ¶ 83. Defendant argues that plaintiff's section 1983 claim must be dismissed because, <u>inter alia</u>, her complaints about Dr. Gardyn were not constitutionally-protected speech, and therefore defendant's reaction to the complaints cannot constitute a violation of her First Amendment rights. Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [Docket Entry No. 21] ("Def. Memo.") at 16-18.[5]

"Under the First Amendment, 'a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'" <u>Weintraub v. Bd. of Educ. of City Sch. Dist. of the City of N.Y.</u>, 593 F.3d 196, 200 (2d Cir. 2010) (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 142 (1983)). "[T]wo inquiries . . . guide [the] interpretation of the constitutional protections accorded to public employee speech." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006). First, the Court must determine "whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." <u>Id.</u> (citation omitted). "If the answer is yes, . . . [t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." <u>Id.</u>

"[W]hen public employees make statements pursuant to their official duties," <u>i.e.</u>, "speech that owes its existence to a public employee's professional responsibilities," the

---

[5]     Defendant also argues that any constitutional due process claim must be dismissed, insofar as the amended complaint is construed as having asserted such a claim. Def. Memo. at 18. Plaintiff does not purport to have asserted a due process claim in her response to the motion, and therefore it is not necessary for the Court to address the issue.

"employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 421. "This is the case even when the subject of an employee's speech is a matter of public concern." Ross v. Breslin, 693 F.3d 300, 305 (2d Cir. 2012).[6] Underlying the distinction between speech "as a citizen" and speech "pursuant to . . . official duties" is "the premise that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" Garcetti, 547 U.S. at 420 (quoting Connick, 461 U.S. at 154). "The Supreme Court's employee-speech jurisprudence reflects 'the common sense realization[s] that government offices could not function if every employment decision became a constitutional matter,' and that 'government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.'" Weintraub, 592 F.3d at 201 (quoting Connick, 461 U.S. at 143).

According to defendant, plaintiff's allegations, even if true, demonstrate that the speech in question was made pursuant to her official duties and not as a citizen. Def. Memo. at 17-18. Defendant notes that (1) plaintiff "raised her concerns about improper patient care in the context of her employment with the Hospital," (2) "her speech exclusively concerned matters directly related to the department that she supervised," and (3) "[t]here is no allegation that she reported any of [Dr. Gardyn's] practices to anyone outside of NHCC." Id. The gist of plaintiff's response to this argument is that her complaints "expressed her views as a citizen" and not as a "public employee pursuant to her official duties" because she was not specifically obligated by her job duties as a Registered Nurse III to report Dr. Gardyn's improper conduct to her superiors. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss and in Support

---

[6]      Because the Court concludes that plaintiff's speech was made pursuant to her official duties, it is not necessary to determine whether it was a matter of public concern.

of Plaintiff's Motion for Leave to Amend the Complaint [Docket Entry No. 25] ("Pl. Memo.") at
18-21.

The Second Circuit has held that speech "pursuant to" an employee's official job duties
may include more than speech that is specifically required of the employee.  In Weintraub, the
Second Circuit reviewed the dismissal of a New York City public school teacher's claim against
his employer for "retaliating against him for filing a formal grievance with his union that
challenged the school assistant principal's decision not to discipline a student who had thrown
books at [the teacher] during class." 593 F.3d at 198.  The Second Circuit affirmed the
dismissal, rejecting the plaintiff's argument that "the key to the First Amendment inquiry
provided by Garcetti is whether he was required[] as part of his employment duties to initiate
grievance procedures against [his supervisor]" and that the defendants failed to show that his
speech was not constitutionally protected because they "pointed to no rule or regulation . . . , job
handbook or other job description, that states unequivocally that the speech . . . was made
pursuant to his official duties as a public school teacher." Id. at 202 (internal quotation marks
and alterations omitted).  Noting that the Supreme Court has cautioned against "construing a
government employee's official duties too narrowly," id., and has instead required a "practical"
inquiry, see Garcetti, 547 U.S. at 424-25 ("Formal job descriptions often bear little resemblance
to the duties an employee actually is expected to perform, and the listing of a given task in an
employee's written job description is neither necessary nor sufficient to demonstrate that
conducting the task is within the scope of the employee's professional duties for First
Amendment purposes."), the Second Circuit concluded that the plaintiff's grievance was made
"pursuant to [his] official duties" because it (1) "was in furtherance of one of his core duties as a
public school teacher," and (2) "had no relevant analogue to citizen speech," Weintraub, 593

F.3d at 198.

The Second Circuit has thus made clear that the absence of a job requirement specifically obligating plaintiff to raise her concerns about Dr. Gardyn's conduct is not dispositive of whether the complaints were constitutionally protected. Applying a practical test to plaintiff's allegations as required by Weintraub demonstrates that plaintiff's speech was made in furtherance of her core duties as a nursing supervisor.[7] Plaintiff complained about the practices of a particular doctor in her department with respect to billing, referrals, patient care, and the proper handling of samples, medications and confidential patient information. Each of these issues is well-within the responsibilities of a nursing supervisor, which according to plaintiff include "direct medical patient care" and "managerial duties." Pl. Memo. at 5, 11. Plaintiff states that she "was required to take appropriate action and report unsafe practices that in her professional nursing opinion could pose a danger to the patients' or the public's health and safety" and "was obligated to expose [Dr. Gardyn's] fraudulent and illegal practices" because the American Nurses Association Code of Ethics provides that "the nurse must be alert to and take appropriate action regarding any instances of incompetent, unethical, illegal or impaired practice by any member of the health care team" and "places a duty to report the questionable practice to an appropriate higher authority within the institution or agency." Id. at 5-6, 18, 20-21 (internal quotation marks omitted). She also states that by reporting Dr. Gardyn's allegedly fraudulent billing practices "[s]he was trying to protect her employer, NHCC as a public health corporation." Id. at 19. Plaintiff's complaints about Dr. Gardyn are therefore related to the core duties imposed by both her supervisory position and her professional status as a nurse, even if

---

[7]    The fact that plaintiff "expressed [her] views inside [her] office, rather than publicly, is not dispositive" of whether she spoke pursuant to her official duties, nor is the fact that her speech "concerned the subject matter of [her] employment." Garcetti, 547 U.S. at 420-21.

plaintiff's explicit duties as a Registered Nurse III may be construed as not having specifically required her to report Dr. Gardyn's conduct. See, e.g., Garcetti, 547 U.S. at 422 ("[The plaintiff] did not act as a citizen when he went about conducting his daily professional activities, such as supervising attorneys, investigating charges, and preparing filings.  In the same way he did not speak as a citizen by writing a memo that addressed the proper disposition of a pending criminal case."); Renken v. Gregory, 541 F.3d 769, 774 (7th Cir. 2008) (affirming the dismissal of a university professor's claim that university officials retaliated against him for exercising his First Amendment rights when he complained about the university's use of grant funds, holding that the plaintiff "called attention to fund misuse relating to a project that he was in charge of administering as a University faculty member[]," and that "[i]n so doing, [the plaintiff] was speaking as a faculty employee, and not as a private citizen, because administering the grant . . . fell within the teaching and service duties that he was employed to perform"); Phillips v. City of Dawsonville, 499 F.3d 1239, 1242-43 (11th Cir. 2007) (holding that the plaintiff, the City Clerk and City Treasurer in charge of all city funds, was speaking as a public employee "pursuant to [her] official duties" when she reported the mayor's misuse of city resources and harassment of a subordinate to other officials in the city government, "[a]lthough her enumerated duties did not specify reporting misconduct by the Mayor"); Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 694 (5th Cir. 2007) (holding that a school athletic director's memoranda to school officials requesting information about the use of funds collected at athletic events were written pursuant to his official duties, stating that "[s]imply because [the plaintiff] wrote memoranda, which were not demanded of him, does not mean he was not acting within the course of performing his job").

Moreover, plaintiff's complaints have no relevant analogue to citizen speech.  Raising

12

internal complaints regarding specific, day-to-day operations within a hospital is not a type of

speech engaged in outside of the employment context and cannot be analogized to, for example,

"writing a letter to a local newspaper or discussing politics with a co-worker." Garcetti, 547 U.S.

at 423-24 (citations omitted). [8] Cf., e.g., Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205,

Will Cnty., Ill., 391 U.S. 563, 573 (1968) (holding that the dismissal of a public school teacher

"for sending a letter to a local newspaper in connection with a recently proposed tax increase that

was critical of the way in which the Board and the district superintendent of schools had handled

past proposals to raise new revenue for the schools" violated the teacher's First Amendment

rights, and stating that "the interest of the school administration in limiting teachers'

opportunities to contribute to public debate is not significantly greater than its interest in limiting

a similar contribution by any member of the general public"); Freitag v. Ayers, 468 F.3d 528,

544-46 (9th Cir. 2006) (holding that a corrections officer's letters to a state senator and a state

inspector general regarding her supervisors' failure to respond to her internal grievances about

sexual harassment by inmates were protected by the First Amendment because the "right to

complain both to an elected public official and to an independent state agency is guaranteed to

any citizen in a democratic society regardless of his status as a public employee," but that the

internal grievances themselves were not constitutionally-protected speech).  Rather, plaintiff's

complaints are materially indistinguishable from the internal grievance in Weintraub, which was

---

[8]      The amended complaint does not allege that plaintiff raised her concerns outside of
NHCC. However, plaintiff states in her opposition to the motion (citing her affidavit) that she
"expressed [her] concerns" regarding Dr. Gardyn's allegedly improper referral practices to the
Nassau County Department of Social Services. Pl. Memo. at 19.  The allegation that plaintiff
raised her concerns with the Nassau County Department of Social Services does not change the
Court's conclusion that plaintiff was speaking pursuant to her duties as a public employee.
Plaintiff's reporting of her concerns to an entity within the Nassau County public health care
system is not analogous to reporting such concerns to an elected representative, inspector
general, or newspaper. See Garcetti, 547 U.S. at 423-24.

held to have no relevant analogue to citizen speech because it "is not a form or channel of discourse available to non-employee citizens, as would be a letter to the editor or a complaint to an elected representative or inspector general." 593 F.3d at 204. Plaintiff raised issues within the sphere of her duties as a nursing supervisor and only with the administration of NHCC and Nassau County Social Services. Therefore, the complaints "lacked a relevant analogue to citizen speech and 'retain[ed no] possibility' of constitutional protection." Id. (quoting Garcetti, 547 U.S. 423); see also, e.g., Davis v. McKinney, 518 F.3d 304, 313 (5th Cir. 2008) ("Cases from other circuits are consistent in holding that when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job.") (collecting cases).

Although "the inquiry into whether a public employee is speaking pursuant to her official duties is not susceptible to a brightline rule," Ross, 693 F.3d at 306, the Second Circuit has held that "[w]hether the employee spoke solely as an employee and not as a citizen is . . . largely a question of law for the court," Jackler v. Byrne, 658 F.3d 225, 237 (2d Cir. 2011). The Court concludes that plaintiff's allegations, even if true, demonstrate that her speech was made pursuant to her official duties as a public employee and not as a citizen. The facts alleged present a straightforward employment dispute, and plaintiff cannot "constitutionalize the employee grievance" upon the basis that her employer happens to be a government entity. Connick, 461 U.S. at 154. Therefore, plaintiff's First Amendment retaliation claim asserted pursuant to section 1983 is dismissed.

B.     Sections 1985, 1986 and 1988

"[T]o state a valid conspiracy claim under [section] 1985(3), plaintiff[] must, among other things, plausibly allege the existence of a conspiracy to deprive [her] of [her] constitutional

14

rights." Kiryas Joel Alliance v. Village of Kiryas Joel, 495 F. App'x 189, 190 (2d Cir. 2012).

Plaintiff has failed to allege the violation of any constitutional right, and therefore her section

1985(3) must be dismissed.  See Curcio v. Roosevelt Union Free Sch. Dist., No. , 2012 WL

3646935, at *18 (E.D.N.Y. Aug. 22, 2012); Nasca v. Cnty. of Suffolk, No. 05-CV-1717, 2008

WL 53247, at *8 n.8 (E.D.N.Y. Jan. 2, 2008) ("Plaintiff's conspiracy claim under 42 U.S.C. §

1985 must also fail because there is no underlying Section 1983 violation.").

Moreover, "vague and conclusory allegations that defendants entered into an unlawful

agreement . . . do not suffice" in alleging a conspiracy under section 1985(3).  Kiryas Joel, 495 F.

App'x at 190; see also Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) ("In order to maintain

an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of

the minds, such that defendants entered into an agreement, express or tacit, to achieve the

unlawful end.") (internal quotation marks omitted).  Aside from her conclusory allegations,

plaintiff has failed to allege any facts that support the existence of a conspiracy.  Furthermore,

plaintiff has failed to respond to defendant's argument that her conspiracy claim is barred by the

intra-corporate conspiracy doctrine.  See Varricchio v. Cnty. of Nassau, 702 F. Supp.2d 40, 62

(E.D.N.Y. 2010) ("The intracorporate conspiracy doctrine posits that the officers, agents, and

employees of a single corporate or municipal entity, each acting within the scope of his or her

employment, are legally incapable of conspiring with each other.").  Accordingly, plaintiff's

section 1985(3) claim is dismissed.

"A claim under section 1986 . . . lies only if there is a viable conspiracy claim under

section 1985." Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994).  Since plaintiff's

section 1985(3) claim is dismissed, the section 1986 claim must be dismissed as well.

Section 1988 does not create an independent cause of action, and therefore this claim is

15

also dismissed. See, e.g., McCaul v. Ardsley Union Free Sch. Dist., No. 11-CV-5586, 2012 WL 1898897, at *4 (S.D.N.Y. May 3, 2012).

C.     Leave to Amend

Plaintiff seeks "leave to amend the complaint to amend her Section 1983 claim to specifically state a First Amendment Retaliation Section 1983 cause of action." Pl. Memo. at 25. Plaintiff argues that "[s]uch amendment would not be futile, because . . . [p]laintiff has alleged the facts sufficient to support a plausible First Amendment Retaliation claim under Section 1983." Id. The Court construes this argument as asserting that the statements in plaintiff's affidavit, which were partially included in her memorandum of law in opposition to the motion, would state a cognizable First Amendment claim if incorporated into a second amended complaint.

As discussed above, the statements in the affidavit lend additional support to the Court's conclusion that plaintiff's complaints about Dr. Gardyn were made in furtherance of her core employment duties. Therefore, amendment of the complaint would be futile, and leave to amend is denied. See Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 89 (2d Cir. 1999) (affirming the district court's denial of leave to amend the complaint where, inter alia, "there [was no] showing as to how plaintiffs might amend their complaint to cure their pleading deficiencies, especially in light of facts to support a claim").

D.     Supplemental Jurisdiction

"A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006). In deciding whether to exercise supplemental jurisdiction, a district court must "balance [ ] the traditional 'values of judicial economy, convenience, fairness,

16

and comity.'" Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98

L.Ed.2d 720. 350 (1988)). "'[I]n the usual case in which all federal-law claims are eliminated

before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the

remaining state-law claims.'" Id. (quoting Cohill, 484 U.S. at 350 n. 7). Given that all of

plaintiff's claims asserted pursuant to federal law are dismissed, the Court declines to exercise

supplemental jurisdiction over the pendent state-law claim. Accordingly, plaintiff's claim

asserted pursuant to section 741 of the New York Labor Law is dismissed without prejudice.

IV.    Conclusion

For the foregoing reasons, defendant's motion to dismiss [Docket Entry No. 19] is

granted insofar as the claims asserted pursuant to federal law are dismissed with prejudice, and

the claim asserted pursuant to the New York Labor Law is dismissed without prejudice. The

Clerk of Court is respectfully directed to close this case.


**SO ORDERED.**

                                          s/ Sandra J. Feuerstein

                                          _____
                                          SANDRA J. FEUERSTEIN
                                          United States District Judge


Dated: July 3, 2013
       Central Islip, New York